IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO NAVARRO-AYALA, *et al.*,

**Plaintiffs,**

v.

GOVERNOR OF PUERTO RICO, *et al.*,

**Defendants.**

Civil No. 74-1301 (FAB)

OPINION AND ORDER

BESOSA, District Judge.

In 1974, Roberto Navarro-Ayala ("Navarro"), represented by his mother, filed this civil rights suit pursuant to 42 U.S.C. § 1983 on behalf of himself and other patients of the Rio Piedras Psychiatric Hospital ("RPPH") claiming that the conditions and care provided by RPPH were insufficient in violation of the patients' rights pursuant to the United States Constitution. (Docket Nos. 0 at pp. 2-3; 594 at p. 3.)  Defendants are the governor of Puerto Rico, the secretary and assistant secretary of the Puerto Rico Department of Health, the director of RPPH, and their successors (collectively "the Commonwealth").  (Docket No. 0 at p. 2.)

On June 8, 2015, the Court appointed attorney Judith Berkan to represent the San Patricio Community Support Group (in Spanish, Grupo de Apoyo Comunitario San Patricio) ("Grupo"),[1] (Docket

---

[1] The Court originally indicated that attorney Berkan was appointed to represent the San Patricio Community Mental Health Center ("SPMHC"), but later clarified the party name.  (Docket No. 689.)

No. 630), and ordered the Commonwealth to pay her interim attorney's fees for work performed on behalf of Grupo, a prevailing party, (Docket No. 673). Before the Court is defendants' motion for reconsideration of the Court's order approving attorney's fees, (Docket No. 678), which Grupo opposes, (Docket No. 680). For the following reasons, defendants' motion for reconsideration is **DENIED**.

## Procedural History

Navarro filed suit on November 25, 1974. (Docket No. 0 at p. 2.) Between 1974-1977, the Court held several hearings which resulted in the Court accepting the parties' joint stipulation on June 3, 1977. See Docket No. 0 at pp. 3-5. The Court monitored and ensured the Commonwealth's compliance with the joint stipulation through reports from Court-appointed Monitor, Professor David Helfeld, and additional Court orders, with special attention paid to the deinstitutionalization of RPPH. See Docket 0 at pp. 9-35. In the early 1990s, several appeals were taken to the First Circuit Court of Appeals. See, e.g., Navarro-Ayala v. Hernandez-Colon, 3 F.3d 464 (1st Cir. 1993); Navarro-Ayala v. Nuñez, 968 F.2d 1421 (1st Cir. 1992); Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325 (1st Cir. 1991) ("Navarro I"). In Navarro I, the First Circuit Court of Appeals found that this suit was a class action even though it had not been certified as one because it "was instituted by a complaint seeking class relief, implicitly granted

class relief, and was conducted for years as a de facto class action." Navarro I, 951 F.2d at 1334.  The First Circuit Court of Appeals defined the class as "all persons who were patients when suit was brought and all persons who may in the future receive treatment or habilitation at [RPPH]."  Id. at 1337.

In 1996, the Court ordered acceptance of the "Plan for aSystem [sic] of Mental and Health Treatment/Rehabilitation Services" ("the 1996 Rehabilitation Plan").  (Docket No. 0 at p. 33.)  In 1997, following discussions regarding the 1977 consent decree, the Court noted that the Commonwealth had made significant improvement in patient care at RPPH in compliance with the 1977 consent decree and returned $95,000 in fines previously assessed to the Commonwealth. (Docket Nos. 425; 432; 439; 443; 594 at p. 4; 604 at p. 2.)  Such progress had been made by 1999 that RPPH achieved accreditation by Medicare and a nation-wide health care commission.  (Docket No. 604 at p. 2.)

In March 2000, the Court approved a joint stipulation and ordered that all money RPPH received from Medicare was to be used for operating the facility.  (Docket No. 476.)  In August 2000, the Court approved a second joint stipulation dismissing the case under specified conditions, including continued accreditation and a yearly budget of at least $18,929,000 for patient care at RPPH. (Docket Nos. 494; 604 at p. 2.)  In 2002, the Court approved another joint stipulation, which dismissed the case but kept in

Civil No. 74-1301 (FAB)                                                4

place the Court's March 2000 and August 2000 orders. (Docket
No. 503.)

In 2003, the Court opened an investigation and reappointed
Professor Helfeld as the Monitor in response to a letter from
employees of San Patricio Mental Health Center ("SPMHC") alleging
deficiencies in patient care at that facility, with special
emphasis on RPPH's budget and SPMHC's continued existence as a
public institution. (Docket No. 508 at pp. 1-2.) Following five
reports by the monitor, the Court concluded its investigation
finding the Commonwealth in "substantial compliance with the
consent decree and the January 28, 2002 order." (Docket No. 604 at
pp. 3-4.) The Court noted that the budget allowance and usage at
RPPH would exceed the required $18,929,000 and that outpatient
services at SPMHC would not be closed or privatized.[2] Id. The
Court also instructed the Commonwealth to ensure continued
accreditation, to continue providing outpatient services at SPMHC,
and to increase RPPH's annual budget to $23,000,000. Id. at pp. 4-
5.

Again in 2013, the Court received a letter from mental health
staff members alleging violations by the Commonwealth, specifically
understaffing, an insufficient budget, and a possible loss of
accreditation. (Docket No. 606 at pp. 1-2.) On September 26,

_____

[2] San Patricio outpatient services are connected to the
deinstitutionalization of RPPH. See Docket No. 604 at p. 3.

2014, Grupo moved to reopen the case, complaining of understaffing and threats of closing SPMHC. (Docket No. 608.)  In response, the Court has reopened the case, (Docket No. 631), appointed Daniel E. Wathen as the monitor, (Docket No. 657), and held several hearings regarding the alleged violations, (Docket Nos. 622; 647; 656). Additionally, the Court appointed attorney Judith Berkan ("Berkan"), a civil rights attorney with forty years of experience, (Docket No. 668 at p. 2), to represent plaintiff Grupo, (Docket No. 630), and ordered the Commonwealth to pay her attorney's fees, (Docket No. 673).  The Commonwealth did not oppose Grupo's original motion for payment of attorney's fees, (Docket No. 668), but now seeks reconsideration of the Court's order for payment, (Docket No. 678).

## Legal Standard for Motions for Reconsideration

"The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration." Sanchez-Perez v. Sanchez-Gonzalez, 717 F. Supp. 2d 187, 193-94 (D.P.R. 2010) (Besosa, J.) (quoting Sanchez-Medina v. UNICCO Serv. Co., 265 F.R.D. 29, 32 (D.P.R. 2010)).  A district court, through its inherent power, can reconsider interlocutory orders until the entry of judgment.  See Mun. of San Sebastian v. Commonwealth of P.R., 116 F. Supp. 3d 49, 53 (D.P.R. 2015) (Besosa, J.) (citing Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008)); see also Geffon v. Micrion Corp., 249 F.3d 29, 38 (1st Cir. 2001).

Civil No. 74-1301 (FAB)                                                6

Here, defendants move the Court to reconsider an interlocutory[3] order awarding attorney's fees.

A district court will alter its original order only if it[10it] "evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (quoting Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007)). Because defendants here present no newly discovered information, the Court reviews its grant of attorney's fees to attorney Berkan for a "manifest error of law."

### Discussion

The "American Rule" for attorney's fees prescribes that each party will bear its own attorney's fees "unless there is express statutory authority to the contrary." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 199 (1st Cir. 2009) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975)). Pursuant to 42 U.S.C. § 1988, a court has discretionary authority to compel payment of reasonable attorney's fees to the "prevailing

---

[3] There is some debate over whether fee awards are final or interlocutory. See Gautreaux v. Chi. Hous. Auth., 491 F.3d 649, 654 (7th Cir. 2007) (final); Commonwealth of Pa. v. Flaherty, 983 F.2d 1267, 1277 (3rd Cir. 1993) (interlocutory).

party"[4] in an action enforcing 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). When evaluating fee requests, "the Court needs to determine whether: (1) a party is in fact a 'prevailing party;' (2) the compensation sought is reasonable (*i.e.*[,] calculation of the lodestar); and (3) there are any additional but exceptional considerations that may require [the court] to adjust [the fee amount] upward or downward." Rosario-Urdaz v. Rivera-Hernandez, 451 F. Supp. 2d 305, 307-08 (D.P.R. 2006) (Casellas, J.) (citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)).

## I. Prevailing Party

A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)). A party need not succeed in every claim to be a prevailing party, but must "prevail[] on the merits of at least some of his claims." Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res., 532 U.S. 598, 603-04 (2001) (noting that even awards of nominal damages are sufficient for awarding attorney's fees); see also Hensley, 461 U.S. at 426-27 (awarding attorney's fees to

---

[4] Case law developing the term "prevailing party" is applicable regardless of the underlying statute creating the fee-shifting provision. Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 8 n.1 (1st Cir. 2011); Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 22 n.8 (1st Cir. 2005).

patients of a psychiatric hospital who won on five of their six claims, including a claim for breach of constitutional rights based on substandard treatment); De Jesus Nazario, 554 F.3d at 199 ("[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (quoting Hensley, 461 U.S. at 429)).

A prevailing party must show "both a material alteration of the legal relationship of the parties and there must be judicial imprimatur on the change." Smith v. Fitchburg Pub. Sch., 401 F. 3d 16, 22 (1st Cir. 2005) (internal quotation marks and citations omitted). A judicial imprimatur requires that the change in the parties' relationship be caused by the court, as opposed to by voluntary action by the parties. See id. at 27 (voluntary settlement); Race v. Toledo-Davila, 291 F.3d 857, 585-59 (1st Cir. 2002) (voluntary dismissal). The United States Supreme Court has held that consent decrees satisfy both the change in legal relationship and judicial imprimatur requirements for obtaining prevailing party status. Buckhannon, 532 U.S. at 598, 604 (citing Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989) (internal citations omitted)); see also Maher v. Gagne, 448 U.S. 122, 129 (1980) (establishing that "parties may be considered to have prevailed when they vindicate rights through a consent judgment") (quoting S. Rep. No. 94-1011, at 5 (1976)).

Court orders other than consent decrees can also satisfy the prevailing party requirements if the court (1) orders a change in the parties' legal relationship, (2) approves relief based on the merits, and (3) maintains oversight to enforce the parties' obligations. <u>Hutchinson ex rel. Julien v. Patrick</u>, 636 F.3d 1, 9 (1st Cir. 2011).

## A.   Origin of Plaintiffs' Prevailing Party Status

Plaintiffs qualify for payment of interim attorney's fees pursuant to 42 U.S.C. § 1988 for work completed by attorney Berkan because plaintiffs qualify as a prevailing party in this litigation.   Plaintiffs' prevailing party status was first established by the Court's 1977 consent decree. <u>See Buckhannon</u>, 532 U.S. at 598, 604 (stating a consent decree is sufficient to establish prevailing party status).   Since 1977, the Court has taken no action to remove the protections or change the legal relationship created by its consent decree and orders. <u>But see</u> <u>Sole v. Wyner</u>, 551 U.S. 74, 83 (2007) (revoking the party's prevailing party status when the court overturned a previous decision in the party's favor).

The order enforcing the 1996 Rehabilitation Plan supports plaintiffs' status as prevailing parties because it meets the three <u>Hutchinson</u> requirements – (1) it reiterates the change in the parties' legal relationship that was created by the 1977 consent decree; (2) it approves relief based on the merits by ordering

defendants to take specific actions to improve treatment and
conditions at RPPH; and (3) the Court continued to monitor
defendants' actions after the order.  See Hutchinson, 636 F.3d
at 9.  The 2002 Court order dismissing the case also affirms
plaintiffs' prevailing party status pursuant to the Hutchinson test
because (1) it confirms that defendants still have a legal duty to
plaintiffs to uphold the treatment standards espoused in prior
Court orders; (2) it dictates specific actions defendants must
continue to take in compliance with the March 2000 and August 2000
orders; and (3) the Court expressly indicated it would remain
involved in the case to ensure compliance with the 2000 orders.
See Docket No. 503; Hutchinson, 636 F.3d at 9.  Similarly, the 2005
order ending the Court's 2003-2005 investigation leaves intact
plaintiffs' prevailing party status because (1) it echoes the
existing legal duty that defendants have to plaintiffs; (2) it
instructs defendants on specific actions required to maintain
treatment standards (*i.e.*, continued outpatient services at SPMHC,
budgetary allotment of $23 million, and accreditation); and
(3) despite a comment that the Court's oversight "cannot –and
should not– last forever," the Court retained jurisdiction to
ensure compliance with its previous orders.  See Docket No. 604 at
pp. 4-6.

**B.   Grupo's Prevailing Party Status**

Plaintiffs' prevailing party status extends to Grupo because Grupo is a part of the plaintiff class.  The plaintiff class consists of "all persons who were patients when suit was brought and all persons who may in the future receive treatment or habilitation at [RPPH]."  Navarro-Ayala, 951 F.2d at 1337. Although the First Circuit Court of Appeals did not extend the class to patients at a different mental health facility known as the Guerrero Therapeutic Community, located seventy miles west of RPPH, id. at 1337, 1343, the Court declines to apply a similar restriction to patients at SPMHC due to its geographic proximity to RPPH, its location "within the municipality of San Juan," see id. at 1327, and the increased integration of the two facilities caused by this litigation and Commonwealth-wide mental health reform. This decision is consistent with the Court's previous decision to investigate alleged violations at the SPMHC in 2003.  See Docket No. 508.  Because Grupo is an organization made up of class-member patients of SPMHC who were patients when the case was filed or became patients in the time since, it is part of the plaintiff class.  Accordingly, plaintiffs' prevailing party status applies to Grupo because relief granted to the class applies to members who join the class after the Court's order.  See Theriault v. Carlson, 353 F. Supp. 1061, 1066-67 (N.D. Ga. 1973), rev'd on other grounds, 495 F.2d 390 (5th Cir. 1974) (stating that plaintiff class

membership is "not static but consists of, all members of the
[class] whether or not they were members at the time th[e] lawsuit
was brought . . . [because holding] to the contrary would have the
court affirmatively sanction, against new members of the [class],
the [constitutional violations] which it condemned against the old"
(internal citations and italics omitted)).

C.   **Defendants' Challenge to Plaintiffs' Prevailing Party Status**

Defendants argue that the Court re-opened this case for
the limited purpose of investigating whether defendants had
violated the parties' stipulations or the Court's subsequent
orders, and that because no ruling has been made by the Court on
this "tangent[ial] issue" of stipulation violation, Grupo does not
qualify as a prevailing party.  (Docket No. 678 at pp. 4-5.)
Essentially, defendants argue that plaintiffs' prevailing party
status does not carry over to the current dispute because the
current dispute is unrelated to the previous proceedings.

Defendants' attempt to segregate the Court's current
investigation from the overall litigation of this case is
unavailing.  As one court has stated, the "language [of § 1988 and
related cases] strongly indicates that whether a party 'prevailed'
as that term is used in § 1988 is determined by examination of the
entire case and not at various stages of the litigation."
Dougherty v. Barry, 820 F. Supp. 20, 25 (D.D.C. 1993) ("[A]
proposed bifurcated definition of the prevailing party is lacking

in logical force.  Regardless of how many courts consider this matter, it is only one lawsuit with only one prevailing party.") (quoting Clymore v. Far-Mar-Co, Inc., 576 F. Supp. 1161, 1164 (W.D. Mo. 1983))).

       In a similar institutional reform case, the Seventh Circuit Court of Appeals awarded attorney's fees to the plaintiffs pursuant to 42 U.S.C. § 1988 for legal work performed more than three decades after the original consent decree.  Gautreaux v. Chi. Hous. Auth., 491 F.3d 649, 651-52 (7th Cir. 2007).  In Gautreaux, African-American public housing tenants and applicants secured a remedial decree "designed to ban racially discriminatory site selection and tenant assignment policies."  Id. at 652.  As public housing reform took place in the 1990s, the remedial decree precluded certain efforts at progress, so the parties worked together to petition the district court, on a case-by-case basis, for waivers to the remedial decree.  Id. at 652-53.  The court granted five such waivers and awarded plaintiffs attorney's fees for their work on each waiver request, noting that:

       [T]he post-decree proceedings and related work for which
       fees are presently sought are not "clearly separable"
       from the original judgment order . . . . [T]his case
       involves post-judgment work and proceedings that are all
       part of one active equitable case, in which compliance
       has always been at issue, and modifications and
       clarifications of the original judgment order must
       continuously be made to account for changing conditions
       and circumstances.

Id. at 653 (second alteration in original).  The Seventh Circuit
Court of Appeals affirmed the district court's order awarding
attorney's fees to plaintiffs.  Id. at 651, 662.

        Here, as in Gautreaux, "this case involves post-judgment
work and proceedings that are all part of one active equitable
case, in which compliance has always been at issue."  See id.
at 653.  The Court's 1996 Rehabilitation plan and 2000, 2002, and
2005 orders all sought to elicit compliance with provisions of the
original 1977 consent decree, making some modifications in the
methods of achieving the consent decree's goals to account for
ongoing advances in mental health treatment.  While the Court in
Gautreaux considered the fee award for the fifth waiver as a
separate proceeding due to numerous modifications of the original
decree which each waived some of the plaintiffs' protection
pursuant to the original consent decree, Gautreaux, 491 F.3d
at 656, it is unnecessary to do so here because the Court's post-
consent decree orders have reinforced the original consent decree
as opposed to waiving its protections.  Because the Court's post-
consent decree orders reinforced the original consent decree, the
Court has taken no action to remove the protections or change the
legal relationship created by its consent decree, and Gautreaux
provides persuasive authority for awarding attorney's fees for
legal work performed several decades after the original decree, the

Court finds that plaintiffs' prevailing party status remains intact despite defendants' argument to the contrary.

## II. Reasonable Compensation

Defendants also argue that the Court failed to analyze the reasonableness of attorney Berkan's fees. (Docket No. 678 at p. 6.) The First Circuit Court of Appeals has established the lodestar method of calculating fees as its method of choice. Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015). The lodestar method multiplies the number of hours worked by the prevailing party's attorneys, excluding "excessive, redundant, or otherwise unnecessary" hours, by a reasonable hourly rate, as determined by comparison to rates in the community for attorneys of equal "qualifications, experience, and competence." Id. (quoting Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014)).

Here, attorney Berkan has submitted a detailed time record which documents the date, task description, and amount of time for each task she has performed pursuant to her representation of plaintiffs. See Docket No. 674-1; see also Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (finding attorney's billing records to be acceptable when they listed "the different tasks performed, the nature of the work, the time consumed, and the dates when effort was expended"). Upon review of her time record, the Court does not find any excessive or redundant entry.

Additionally, the Court finds the rate of $250 per hour to be comparable to rates paid to other experienced civil rights attorneys practicing in the San Juan metropolitan area.  See Gonzalez-Nieves v. Mun. of Aquadilla, Civil No. 3:13-cv-01132 (JAF), 2016 WL 297432, at *2 (D.P.R. 2016) (Fuste, J.) (finding $280 for court appearances and $250 for out-of-court work to be a reasonable rate for attorney's fees pursuant to 42 U.S.C. § 1988 for an experienced attorney in a successful disability discrimination claim); see also Rosario-Urdaz, 451 F. Supp. 2d at 310 (finding $250 to be a reasonable rate for in-court proceedings for an attorney with thirty years of civil rights experience); Anywhere Inc. v. Romero, 344 F. Supp. 2d 345, 348 (D.P.R. 2004) (Laffitte, J.) (finding $250 to be a reasonable rate for an experienced attorney).  According to the lodestar method, the reasonable attorney's fees for attorney Berkan's work completed between June 9, 2015 and February 24, 2016 equate to $19,087.50.[5]

## III. Exceptional Considerations

Finally, defendants argue that the Court failed to consider any relevant "exceptional consideration" that may increase or reduce the fee award.  (Docket No. 678 at p. 6.)  After calculating the lodestar, "[t]he court may . . . adjust the potential award based on factors not captured in the lodestar calculation." Matalon, 806 F.3d at 638.  "[A] prevailing plaintiff should

---

[5] Lodestar = 76.35 hours x $250 hourly rate = $19,087.50.

Civil No. 74-1301 (FAB)                                               17

ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." De Jesus Nazario, 554 F.3d at 199 (quoting Hensley, 461 U.S. at 429). "[T]he burden is on the defendant to show that unusual conditions would make an award unjust or inappropriate." Id. at 200 (quoting United States v. Cofield, 215 F.3d 164, 171 (1st Cir. 2000)). Examples of exceptional considerations include a fee enhancement for "stellar performance," a fee reduction for overstaffing a case, Lipsett, 975 F.2d at 938, 942, and a reduction for time spent on unrelated, failed claims, Rosario-Urdaz, 451 F. Supp. 2d at 310.

Here, defendants fail to assert any special consideration that the Court may have overlooked. Because attorney Berkan did not charge for work on unrelated or failed claims and because she is not overstaffing this case. Accordingly, the Court finds no exceptional circumstances at this time and declines to increase or decrease the amount of her fees as calculated using the lodestar method. Whether she performs at a "stellar" level will be determined as the case proceeds.

### Conclusion

Plaintiffs became prevailing parties in 1977 when the Court issued a consent decree approving the parties' joint stipulation to improve conditions at the PRRH. Plaintiffs retain their prevailing party status despite the 2002 dismissal of the case and 2003-2005 investigation. Grupo enjoys prevailing party status as part of the

Civil No. 74-1301 (FAB)                                                  18

plaintiff class.  Furthermore, the amount awarded for attorney Berkan's work is reasonable and no special circumstances exist to alter the amount calculated using the lodestar method.  Therefore, payment to Grupo for the attorney's fees of attorney Berkan in the amount of $19,087.50 is justified and there is no manifest error of law in the Court's prior order awarding attorney's fees, (Docket No. 673).  Accordingly, defendants' motion for reconsideration, (Docket No. 678), is **DENIED**.  Attorney Berkan's fees will be paid **no later than June 15, 2016.**

　　　　**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 12, 2016.

　　　　　　　　　　　　　　　　s/ Francisco A. Besosa
　　　　　　　　　　　　　　　　FRANCISCO A. BESOSA
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE